Reed, Justice (Ret.),
sitting by designation, delivered the opinion of the court:
The Receiver in Bankruptcy of the Firth Machine & Tool, Inc., of Ohio, a bankrupt, and the First National Bank of Fostoria, Ohio, filed suit on three causes of action against the United States in this court for alleged breaches of its obligations by the Government under three separate war production contracts with Firth. The first two causes of action are not involved in the motion for summary judgment by the Bank, an assignee of the contract sued upon in the third cause of action, and need not be considered. The third cause of action, alone involved in this motion, states that the proceeds of the contract there in question, No. DA-20-113ORD-20603 of May 7, 1956, were assigned, as shown by plaintiff’s Exhibit B-l, to the plaintiff bank June 29,1956, as security in compliance with the Assignment of Claims Act of 1940 as amended.[1] It was alleged that the Government was duly notified thereof, and that the contract was thereafter completely performed by Firth but that the Government has failed and refused to pay plaintiffs $19,119.60 now due.
In its answer to these allegations, the Government admits this “purported” assignment, but alleges it “has no binding effect on the Government,” admits the completion of Contract *492 No. 20603, that it holds the claimed amount from payment, but states that its “withholding” is proper. This is allegedly justified because Firth owes the Government amounts under other contracts that exceed the sum claimed in the present motion.
With the pleading in this condition, the plaintiff Bank moved for partial summary judgment for the amount admittedly due by the Government through completion of the Firth contract No. 20603, assigned to the Bank under the said Assignment of Claims Act. The Government moved for partial summary judgment against the Bank’s claim under the above assignment.
The plaintiff Bank assumes that the Assignment Act forbids assignment of claims against the United States unless specifically authorized by statute. Section 203 provides that the prohibition of assignments does not apply
“in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency. . . .”
This claim was assignable. As to this there is no dispute. This exception was, of course, to facilitate the financing of government contracts. The real risk of financing government construction or production contracts lies in the inability of the contractor to satisfactorily complete his contract within the fixed price. The collection of the contract price raises no problem. To limit that risk to a particular contract Congress, in 31 U.S.C. § 203 (4), enacted that any government claim against the contractor for liability “which arises independently of such contract” shall not be set up against the assignee.[2] The progressive liberalization of the Act by its *493 various amendments manifests the purpose of Congress to protect effectively assignments in accordance with the Act. See Central Bank v. United States, 345 U.S. 639, 644. The Government contends that the plaintiffs’ motion raises two issues:
“1. Whether an assignee-bank is entitled to the benefits of the no set-off provisions of the contract and the Assignment of Claims Act where the assignee-bank made no direct payments or loans to the assignor-contractor ?
“2. Whether, in fact, the sums advanced by the as-signee-bank to third parties, none of whom was a financial institution, found their way in whole or in part to the assignor-contractor?”
As to the Government’s first claim — that the assignment is ineffective because no money was paid or loaned to Firth directly by the Bank — the record shows this by affidavit of the Bank’s president, Mr. Layton, with exhibits. An assignment from Firth to plaintiff Bank of all assignors’ interests in claims for money from the Government under contract No. 20603, was made June 29, 1956. The Government acknowledges notice thereof. The assignment stated the assignee bank had made loans, and in the future intended to make additional loans and advances, to the assignor to assist in the performance of said contract.
Actually no loans or advances were made by the Bank directly to Firth Machine & Tool. The financing of the contract was arranged by Firth and the Bank, assignor and as-signee of the proceeds of Contract No. 20603, thus. A note dated August 4,1956, for $60,000 was made to the assignee-bank. It was signed by Robert Lehmann, his wife, and George Firth, who was president of Firth Machine & Tool, Inc., all as individuals. It was secured by “First Mtge 160 A. Scott Twp., Sandusky County; and assigned First Mtge from Firth Machine and Tool Inc. to Robert Lehmann on real estate, also First Mortgage assigned from Firth Machine and Tool Inc. to Robert Lehmann on Machinery and equipment.” This arrangement subordinated the prior indebtedness of Firth as an individual and of the Firth Ma *494 chine & Tool Company to Mr. Lehmann to the bank advancements for the Company’s carrying out the contract with the United States and also added the names of Robert and Anna Lehmann, his wife, as joint obligors to the Bank. There was an understanding
“that the money to be advanced by the Bank would be used by Firth to finance the performance of its two contracts with the Government. A controlled account was set up in Mr. Lehmann’s name to which moneys advanced by the Bank were to be paid so that Mr. Lehmann could insure that these funds would be used for the performance of Firth’s two Government contracts.”[3]
The Layton affidavit shows in summary as to contract No. 20603 only
“Total Contract funds applied on Loans_$42, 538. 59 (20603 only)
“Total Contract funds traced into Firth_ 253,143.52 (20603 only).”
The receiver confirms the method of handling asserted from August 1956 on — the date he became associated with the Firth company. A letter of instruction dated March 17, 1957, from the Tool Company, signed by its President and his wife as “See’y-Treas.,” directs the Bank to turn moneys received under Contract No. 20603 to Robert E. Lehmann, and one of January 25,1957, from Mr. Lehmann directs the Bank as follows:
“This is your authority to deduct from all Government check to apply on my loan. Forty (40%) percent from said checks to be applied on loan and the remaining Sixty (60%)- from said checks to be credited to the General account of the Firth Machine and Tool Co. account carried at your bank.”
No explanation as to why this letter was not issued simultaneously with the August 4, 1956, note for $60,000 appears.
We do not think this arrangement itself is illegal. As said in a decision of the Comptroller General:
“It is conceded by the Internal Revenue Service that if the assignment to the Union Trust Company is valid the tax claim cannot be deducted from the $150,000 contract *495 payment to the prejudice of the bank. However, the District Director of Internal Revenue questions the validity of the assignment on the basis that it was arranged by the surety for its own protection in circumvention of the Assignment of Claims Act. The Assignment, of Claims Act does not forbid an assignee from requiring security in addition to the assignment of the contract proceeds nor does it prohibit the acceptance of such security from the contract surety. Under all the circumstances of the case, it is our opinion that the assignment to the bank is not invalidated by the surety’s guaranty of and control over the loans made by the bank.” 35 Comp. Gen. 104, 106.
The Government argues that the exception of the Assignment of Claims Act to assignments of claims against the government “was not designed nor intended to clothe a financial institution with the protection of the garb of its provisions when that financial institution did not assist the assignor-contractor by way of loans attendant to the performance of a Government contract.” That is, the money advanced by the assignee for Government contracts must pass directly from the assignee to the assignor. We do not read the statute, however, as requiring that the proceeds of the loan must necessarily be paid by the assignee directly to the assignor. The Government cites no statutory language or authority for that position. The Act does require an assignment to one party only, but it specifically permits that party to act as agent or trustee for two or more parties participating in the financing.[4] This shows that the Act has no policy against indirect financing. Financial arrangements sufficient to satisfactorily assure the Bank against the contractor’s inability to complete the contract without loss are necessary. This, in the case of an embarrassed contractor, might well require managerial and financial assistance from a third party such as Lehmann. Thus we conclude that, absent a specific statutory requirement to that effect, the mere fact that the loans were not made directly to *496 tbe Firth. Company does not require invalidation of the assignment. As we stated in Chelsea Factors, Inc. v. United States, 149 Ct. Cl. 202, 210, 181 F. Supp. 685, 690:
“The 1940 Amendment to the Assignment of Claims Act was intended to facilitate the financing of Government contracts by private capital in the way in which private capital normally operates in financing the country’s economy.”
We must remember that this Act was drafted because the Revised Statutes on assignment of contracts had been
“so strictly worded and ... so strictly construed that an attempted assignment which [did] not comply with the exact terms of the statute [had] been held void even as between the assignor and the assignee, so that it confer [red] no rights in the assignee as against a trustee in bankruptcy of the assignor (National Bank of Commerce v. Downie, 218 U.S. 845). As a consequence, banks and other lending agencies which might otherwise be willing to extend credit to finance the performance of contracts with the Government [were] unable to rely upon assignments of amounts payable under such contracts as security, because they would find themselves in the position of general creditors of the contractors in the case of bankruptcy even though the funds which they advanced may have made the fulfillment of the contracts possible.” H.R. Rep. No. 2925, 76th Cong., 3d Sess., p. 2.
We next consider the Government’s contention that the assignment is valid only to the extent that Firth actually received the proceeds of the loan. The Act was designed to make funds available to a contractor with which he could complete his government contract. If the loan is used for another purpose, the objectives of the Act are not satisfied. However, another factor must be taken into account — if lending institutions know that the validity of an assignment turns upon the use to which the funds are put, they would, to say the least, be reluctant to rely upon the security of contract assignments. We note, therefore, that if the loans are made directly to a contractor by a financial institution, the use to which the funds are put will not defeat the validity of the assignment.
*497 Here, however, the loan was made through Lehmann. We think it not unreasonable to charge the Bank with the information in Lehmann’s possession if Lehmann spent the funds for Firth in a manner which did not promote completion of the contract (e.g., purchase of articles not useful to Firth in carrying out the contract). To the extent that Lehmann so expended the funds, the assignment should be defeated. Thus, we hold that the assignment is valid to the extent that the moneys were actually paid over to Firth by either Leh-mann or the Bank or to the extent that they were spent by Lehmann to aid Firth in completing the contract.
Since the record does not show what part of the funds advanced by the Bank were used in the performance of the contract or were paid over to Firth, the motions for partial summary judgment are denied without prejudice, and the case is returned to the trial commissioner for further appropriate proceedings including a determination of which funds were so used or paid over. The burden of proof on these matters is on the plaintiff.
It is so ordered.
Durfee, Judge; Laramore, Judge; Whitaker, Judge; and JoNes, Chief Judge, concur.
Davis, Judge,
took no part in the consideration and decision of this case.

 31 U.S.C. § 203.

 A note covering the cases, statutes and problems under the Assignment of Claims Act appears in 101 U.Pa.L.Rev. 106, 121, 123.
Sec. 203(4) provides:
“Any contract of the Department of Defense . . . may ... be amended without consideration to provide that payments to be made to the assignee of any moneys due or to become due under such contract shall not be subject to reduction or set-off, and if such provision or one to the same general effect has been at any time heretofore or is hereafter included or inserted in any such contract, payments to be made thereafter to an assignee of any moneys due or to become due under such contract, whether during or after such war or *493 emergency, shall not be subject to reduction or set-off for any liability of any nature of the assignor to the united States or any department or agency thereof which arises independently of such contract, . .

 Affidavit of Mr. Layton.

 31 U.S.C. §203(3) : “That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing. . . .”