**CONTINENTAL BANK AND TRUST COMPANY, a Corporation Organized under the Banking Laws of the Commonwealth of Pennsylvania**

v.

**The UNITED STATES.**

No. 179-68.

United States Court of Claims.

Oct. 17, 1969.

As Amended on Denial of Rehearing Jan. 9, 1970.

David V. Anthony, Washington, D. C., attorney of record, for plaintiff. John Lane, Jr., Sellers, Conner & Cuneo, Washington, D. C., Morton Newman, Blank,

Rome, Klaus & Comisky, Philadelphia, Pa., of counsel.

Michael Rubin, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant. David Moses, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

Plaintiff, Continental Bank and Trust Company,[1] a Pennsylvania banking corporation, sues to recover $43,848.41 plus accrued interest to which it alleges it is entitled as assignee of a contract between the defendant and the General Development Corporation. Plaintiff lent funds to General Development for the performance of the contract. The funds have been repaid; however, plaintiff asserts that General Development is otherwise indebted to it, and that it is, accordingly, entitled to the funds still owing on that contract by the government. This case is before the court on cross-motions for summary judgment.[2]

The pertinent facts, which, for purposes of this motion, the defendant admits, are as follows:

On February 23, 1965, the defendant, acting through its Department of the Army, awarded the General Development Corporation of Elkton, Maryland, Contract No. DA–18–035–AMC–459(A). Thereafter, to secure anticipated performance loans, General Development assigned plaintiff all proceeds of that contract. The disbursing and contracting officers were duly notified of the assignment, and received copies of the assignment instrument. The assignment in-

1. Plaintiff is successor in interest to the Broad Street Trust Company by virtue of a change in corporate name.

2. On November 25, 1968, the defendant filed a motion to dismiss plaintiff's petition. Thereafter, in the course of oral argument on the motion, the defendant submitted several exhibits; and suggested that the case was ripe for disposition on the merits. In a post-argument brief, plaintiff requested that the court consider that brief and its response to the defendant's motion as a cross-motion for summary judgment. See Rule 38(b) [formerly Rule 20(b)].

strument, dated March 15, 1965, in pertinent part provided:

> For and in consideration of the sum of $1.00 and in further consideration of loans about to be made to General Development Corporation we hereby assign and set over and transfer unto the Broad Street Trust Company * * all of our right, title and interest to all moneys that are now due or to become due and not already paid under * * contract No. DA–18–035–AMC–459 (A), and the total amount of said contract being $445,950.00 and further we hereby are giving and granting unto the Broad Street Trust Company full power and authority to demand and receive the same to its own use, and upon receipt thereof to give a discharge for the same.

> General Development Corporation represents and warrants that it has made no prior assignment or other disposition of moneys and claims hereby assigned [and such moneys and claims] shall not be subject to reductions or setoff for any indebtedness of the company to the United States of America, arising independently of the above mentioned purchased [sic] order.

As permitted by the Assignment of Claims Act of 1940, as amended [41 U.S.C. § 15, 31 U.S.C. § 203 (1964)], the contract included the standard Defense contract Assignment of Claims clause, which provided that "[a]ny * * * assignment [or reassignment] shall cover all amounts payable under [this] contract and not already paid"; and that payments to be made to the assignee of the contract would not be subject to reduction or set-off for any liability of the contractor-assignor arising "independently" of the contract. ASPR 7–103.8.

On or about November 15, 1965, Contract No. DA–18–035–AMC–459(A) was terminated for the convenience of the government. All of General Development's obligations thereunder have been fulfilled. Still outstanding, however, and at issue in this litigation, is $43,848.41 [3] due General Development under the terms of the convenience termination.

All advances made by plaintiff for the performance of the contract have been repaid, but plaintiff claims that General Development is indebted to plaintiff in the sum of $43,848.41 on other loans secured by the assignment.

On September 15, 1966, an involuntary petition in Bankruptcy was filed against General Development Corporation in the United States District Court for the District of Maryland; and, on October 6, 1966, the corporation was adjudged bankrupt. As of that date, General Development was indebted to the government in the sum of approximately $332,602.26 for excess costs and other damages resulting from the company's performance under seven Army contracts. No moneys were owed to defendant by General Development under the instant contract.

By letter under date of November 16, 1967, plaintiff demanded that defendant proffer $43,848.41. The defendant refused; and on June 14, 1968, plaintiff brought action to recover that sum in this court.

On May 22, 1969, the trustee in bankruptcy moved to intervene in this action. Thereafter, on June 3, 1969, the court allowed a motion by the trustee to withdraw its motion to intervene; and the trustee no longer asserts any interest in the sum plaintiff seeks.

I

Since 1792, federal statutes have restricted the assignment of government contract claims.[4] 1 Stat. 245 § 2 (1792).

---

3. The defendant concedes that it is indebted to General Development in the sum of $100,141.05 under the terms of the convenience termination. Plaintiff here seeks $43,848.41 of that sum, plus accrued interest, the amount to which General Development is indebted to it.

4. The present statute is based on one section of the Act of February 26, 1853, 10 Stat. 170 [codified as Rev.Stat. § 3477 (1878)].

Such assignments were invalid with respect to the government[5] until 1940, when, "to assist in the national-defense program," the anti-assignment statutes were amended to permit the assignment of contracts for more than $1,000 as collateral for performance loans made by financial institutions. This was intended to broaden the base of competitive bidders to include small companies which, because of their inability to finance the cost of contract performance and the statutory prohibition against assignment of the proceeds of the contract, were unable to undertake the performance of government contracts. H.R.Rep. No. 2925, 76th Cong., 3d Sess. 2 (1940). To the extent pertinent to this case, the Assignment of Claims Act of 1940, as amended, provides:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.

> The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: *Provided,* * * * 3. That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing; 4. That in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (a) the contracting officer or the head of his department or agency; (b) the surety or sureties upon the bond or bonds, if any, in connection with such contract; and (c) the disbursing officer, if any, designated in such contract to make payment.

> Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section, shall constitute a valid assignment for all purposes.

> \* \* \* \* \* \*

> Any contract of the Department of Defense, * * * or any other department or agency of the United States designated by the President, except any such contract under which full payment has been made, may * * * provide or be amended without consideration to provide that payments to be made to the assignee of any moneys due or to become due under such contract shall not be subject to reduction or set-off, and if such provision or one to the same general effect has been at any time heretofore or is hereafter included or inserted in any such contract, payments to be made thereafter to an assignee of any moneys due or to become due under such contract * * * shall not be subject to reduction or set-off for any liability of any nature of the assignor to the United States or any department or agency thereof which arises independently of such contract, or hereafter for any liability of the assignor on account of (1) renegotiation under any renegotiation statute or under any statutory renegotiation article in the contract, (2) fines, (3) penalties * * *, or (4) taxes,

---

5. When the rights of private parties alone are involved, assignments are generally upheld, on the theory that the statute affords protection solely for the government. *See* Martin v. National Sur. Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937).

social security contributions, or the withholding or non-withholding of taxes or social security contributions, whether arising from or independently of such contract. 41 U.S.C. § 15 (1964).

■ The defendant agrees that the assignment before the court comes within the "purview and intent" of the Assignment of Claims Act of 1940, and that it applies to all of the contract proceeds. Also, the defendant concedes that funds were advanced by plaintiff "for the performance of said Government contract." However, the defendant argues that it is, nonetheless, entitled to set off General Development's indebtedness to it (under the aforementioned Army contracts) against the sums admittedly due under the terms of the convenience termination, because the loans made for the performance of Contract No. DA–18–035–AMC–459(A) have been repaid. In the circumstances of this case, defendant says the "no set-off" provisions of the contract and Act do not apply.

This case thus raises a narrow issue regarding the extent of the applicability of the "no set-off" provisions. The language of the Act, its legislative history, and the cases which have interpreted it, are instructive.

As noted earlier, and acknowledged by the defendant, the Act, as amended, provides that assignments thereunder "shall cover *all* amounts payable under such contract and not already paid * * *" [Emphasis added]; and permits the inclusion in government contracts of provisions to the effect that payments to assignees "shall not be subject to reduction or set-off for any liability of any nature of the assignor to the United States * * * which arises independently of such contract[s]."

There is no question in this case but that the indebtedness the defendant asserts it may set off against the amounts due under the convenience termination arose "independently" of the subject contract. The legislative history of the 1940 Assignment of Claims Act indicates that it was just this type of indebtedness which Congress determined should not be set off against contract proceeds. In explanation of the "no set-off" provision, which he offered as an amendment to H.R. 10464 [76th Cong., 3d Sess. (1940 [6])], Senator Barkley stated:

> * * * [T]he amendment merely provides that when a contractor, in order to obtain money so that he may perform his contract with the Government under the defense program, assigns his contract to a bank or trust company in order to get money with which to proceed with the work, *it shall not be permissible to offset against the claim or contract later an indebtedness which the contractor may owe the Government on account of some other contract or some other situation.* * * * 86 Cong.Rec. 12803 (1940) [Emphasis added].

See Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953); Rose v. United States, 373 F.2d 963, 966, 179 Ct.Cl. 224, 230–231 (1967); Coleman v. United States, 158 Ct.Cl. 490, 492–493 (1962); and Chelsea Factors, Inc. v. United States, 181 F.Supp. 685, 149 Ct.Cl. 202 (1960), for cases in which the statutory provision against set-offs was considered and interpreted.

After carefully reading its provisions, we find nothing in the language of the applicable statute which supports defendant's contention. Moreover, the legislative history of the 1951 amendments to the Assignment of Claims Act of 1940 indicates that Congress considered and declined to enact a provision which would have assured the construction the defendant asserts.

In 1951, following a series of decisions of the Comptroller General narrowly construing the "no set-off" provision of the 1940 Act, Congress amended the Act to prohibit set-off or reduction for renegotiation, fines, and certain tax and penalty

---

6. On October 9, 1940, H.R. 10464 was enacted into law as the "Assignment of Claims Act of 1940."

indebtedness, "whether arising from or independently of" assigned contracts. 41 U.S.C. § 15 (1964) [*See* text of statute *supra*]. In comments to the Senate Committee on Banking and Currency on the proposed legislation, Acting Comptroller General Frank L. Yates noted that the set-off and reduction limitations afforded excessive protection, "due to the fact that the prohibitions against withholding or recovery apply to *all* assigned payments * * *" [Emphasis added]; and suggested that the "no set-off" provision be revised to require assignees to release their assignments upon repayment of performance loans and provide that the limitations not apply to "payments *in excess of* amounts paid or loaned to the assignor under any factoring arrangement, loan, discount, or advance made in connection with or secured by the assignment." S.Rep. No. 217, 82d Cong., 1st Sess. 8 (1951) [Emphasis added], U.S.Code Cong. & Admin. Service 1951, p. 1420.

Thereafter, the Committee revised its originally introduced bill [S. 998, 82d Cong., 1st Sess. (1951)] to reflect the Acting Comptroller General's set-off and reduction limitation suggestion.[7] The Committee Report stated:

> * * * [T]he amendment would continue the provision of the present law that, if an assigned contract contains a "no set-off" clause, payments made by the Government to the assignee bank will not be subject to reduction or set-off because of any claims of the Government against the contractor which arise independently of the contract, but it would also be made clear that the assignee would be protected against set-off on account of claims of the Government against the contractor arising from renegotiation, fines, and penalties—claims which are ordinarily regarded as arising outside of the assigned contract. *In any event, however, where the Government has claims against the contractor, the Government would be allowed to withhold, out of payments due an assignee bank, any amounts in excess of the bank's interest in loans secured by such assignments.* S.Rep. No. 217, 82d Cong., 1st Sess. 2–3 (1951) [Emphasis added].

On April 11, 1951, the amended S. 998 was reported out in the Senate.

The Senate, however, further amended S. 998. On April 24, 1951, H.R. 3692, a similar bill, was reported out in the House of Representatives [H.R.Rep. No. 376, 82d Cong., 1st Sess. (1951)]. The Senate Committee on Banking and Currency preferred H.R. 3692 to S. 998; and on April 25, 1951, Senator Robertson, speaking for the Committee, offered an amendment to S. 998, which had the effect of substituting the language of H.R. 3692 for that in the Committee bill. Among the differences between the bills was the absence of a set-off and reduction limitation provision in H.R. 3692 similar to that included in the amendment to S. 998 as a result of the Acting Comptroller General's comments. Senator Robertson explained:

> * * * The protection afforded the assignee against claims, including those involving the so-called "no set-off" clause, would be limited under S. 998 to amounts loaned or advanced by the assignee, whereas H.R. 3692 would not impose such limitations. *The reason for this difference is that as a practical matter it would be difficult to determine the exact amounts loaned or advanced where several contracts are assigned to an assignee and provision is made for revolving credits.* 97 Cong.Rec. 4350 (1951) [Emphasis added].

The substitutionary amendment was adopted; and on April 25, 1951, S. 998, as amended, passed the Senate. On May 1, 1951, the House passed the Senate bill; and on May 15, 1951, S. 998 was signed by the President and thereby enacted into law.

---

7. Apparently, the Acting Comptroller General's assignment release suggestion was not adopted.

This court has heretofore pointed out that "[t]he progressive liberalization of the Act by its various amendments manifests the purpose of Congress to protect effectively assignments in accordance with the Act." Coleman, *supra*, 158 Ct. Cl. at 492–493.

The cases on which defendant relies were decided on the basis of facts which are not presented in this case. Beaconwear Clothing Co. v. United States, 355 F.2d 583, 174 Ct.Cl. 40 (1966) is inapplicable here, since in that case, the contractor-assignor, at the time of suit, was no longer indebted to the assignee, and the assignee released the assignment. Here, General Development is acknowledged to be indebted to plaintiff and there has been no assignment release. Similarly, Chattanooga Wheelbarrow Co. v. United States, Civil No. 4755 (E.D. Tenn., January 26, 1967; reh. denied, April 14, 1967), and McPhail v. United States, 181 F.Supp. 251, 149 Ct.Cl. 179 (1960), involved questions of assignment validity. Admittedly, there is no such issue in this case.

In apparent recognition of the lack of support for its position in the decisional law, defendant resorts to the contention that the set-off is permissible in this instance, since under the common law of assignments, plaintiff's interest in the assigned collateral ceased when the loan made for the performance of the contract was repaid. 6 C.J.S. Assignments § 93. This argument ignores the modern trend away from tying particular loans to particular security. Furthermore, the adoption of such a rule for the statutory assignment involved here would impair the familiar revolving credit financing device to which Congress referred when deleting the previously discussed set-off and reduction limitation provision from the 1951 amendments to the Act. As this court noted in *Chelsea Factors, Inc., supra,* 181 F.Supp. 690, 149 Ct.Cl. at 210:

> The 1940 Amendment to the Assignment of Claims Act was intended to facilitate the financing of Government contracts by private capital *in the way in which private capital normally operates in financing the country's economy.* [Emphasis added].

 For the reasons stated, plaintiff's cross-motion for summary judgment is granted, and the defendant's motion for summary judgment is denied. Plaintiff is entitled to recover the amount General Development is indebted to plaintiff on loans secured by the assignment. Plaintiff is also entitled to recover accrued interest, at the rate specified in the loan documents, from November 16, 1967, to date of payment, on the amount General Development is indebted to plaintiff on loans secured by the assignment. The right to recover such interest accords with both the letter and spirit of the Assignment of Claims Act of 1940, as amended, 31 U.S.C. § 203. *Chelsea Factors, Inc., supra,* 181 F.Supp. 685, 149 Ct. Cl. at 215. Plaintiff is not seeking nor are we awarding statutory interest on the amount of the recovery. 28 U.S.C. § 2516(a) (1964).

The amount of the recovery, which shall not exceed $43,848.41, plus accrued interest thereon at the rate stated above from November 16, 1967, to date of payment, shall be determined pursuant to Rule 131(c) (2). In any event, the total recovery shall not exceed the amount the defendant is indebted to General Development under the terms of the convenience termination ($160,141.05).