## FIRST NATIONAL CITY BANK

v.

## The UNITED STATES.

No. 9–75.

United States Court of Claims.

Jan. 26, 1977.

Joseph H. Levie, New York City, atty. of record, for plaintiff. Franklin N. Meyer, New York City, of counsel.

Stephen Anderson, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant. Leslie H. Wiesenfelder, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges, en banc.

## ON REHEARING EN BANC

DAVIS, Judge.

This case, before the court on cross-motions for summary judgment, was first heard by a panel. On June 16, 1976, a majority of the panel determined that plaintiff bank was entitled to recover $54,-369.37 free of defendant's set-offs; the issue of interest on the award was remanded to the Trial Division, 537 F.2d 426, 210 Ct. Cl. 375. The writer of the present opinion dissented in part, coming up with a result not too far in monetary terms from the majority's determination but rejecting the main basis of that decision—the no set-off provisions of the Assignment of Claims Act of 1940. The defendant moved for rehearing en banc attacking that foundation of the decision. Rehearing en banc was granted and the case has been orally reargued en banc. As a result of the consideration by the full court, we vacate the earlier panel decision and now substitute the following discussion and decision.

### I

#### Facts

The genesis of the claim is found in a December 28, 1966, contract between Trilon Research Corp. (Trilon) and defendant. For a consideration of $87,318.46 Trilon agreed to prepare and update certain Navy technical manuals. On April 19, 1967, defendant made an initial progress payment under the contract to Trilon in the amount of $46,527.43.

The contract contained the usual financing and assignment clauses, incorporating by reference the provisions of the Armed Service Procurement Regulations (ASPRs), Paragraph 7–103.8 ASSIGNMENT OF CLAIMS (Feb. 1962), which in turn is based on the Assignment of Claims Act.[1]

Pursuant to these provisions, Trilon,[2] Franklin National Bank (Franklin), and the Small Business Administration (SBA) entered into a financing arrangement. Trilon obtained a loan of $250,000; $125,000 from Franklin and the balance from the SBA. As collateral, Franklin and the SBA took a lien on Trilon's inventory and receivables. The lenders, with Franklin acting as trustee, also obtained an assignment of Trilon's right to Government contract payments, including but not limited to, the contract at issue in the present case.[3] Defendant received notice of Trilon's assignments on May 12, 1967. The parties completed the initial financing in July 1967.

By November 1968, Trilon had completed its work on the technical manual contract. In addition to the $46,527.43 progress payment already made to Trilon, defendant had further paid Franklin (as trustee) the remaining $40,791.03. However, "accord and satisfaction" was delayed due to a dispute concerning amounts Trilon had earned for extra work.

One year later, after Trilon had fully completed the manuals contract, plaintiff entered the scene by making loans to financially troubled Trilon. The initial loan was for more than $250,000. In September 1969, the SBA advised Franklin that it had agreed to subordinate its one-half interest

---

1. 31 U.S.C. § 203 (1970) and 41 U.S.C. § 15 (1970).

2. Through a subsidiary, P & D Electronics Co.

3. The primary purpose of Trilon's formation and the bulk of its operations were directed to Government contract work.

in Trilon's inventory and receivables (including Trilon's Government contracts) to plaintiff. Subsequently, plaintiff loaned Trilon additional amounts and is now owed more than $400,000 by Trilon.

Still later, in September 1971, Franklin found itself in severe economic difficulty. Franklin "called" its loans to Trilon and threatened to call the SBA's loan. Attempting to forestall this action, Trilon issued a $45,000 check payable to Franklin and drawn on plaintiff. However, plaintiff held a prior right to the $45,000 based upon the independent loans to Trilon. To permit Trilon to continue work on its ongoing Government contracts, Franklin and plaintiff entered into a refinancing arrangement. Franklin transferred its security interests in Trilon's receivables (including Government contract rights) to plaintiff. Plaintiff paid Franklin $52,812.[4]

As a result of the refinancing, in November 1971, Trilon executed a second "notice of assignment" of the technical manuals contract. Trilon assigned the payment rights to plaintiff. The notice was sent to defendant which remitted the documents to plaintiff to obtain a release of Trilon's prior assignment to Franklin. Such release was not obtained.

From late 1968 through 1971, the dispute over Trilon's entitlement to additional compensation on the technical manuals contract continued. Progress toward resolution finally began in February 1972, when the

Contracting Officer (CO) ruled that Trilon had earned an additional $62,181.37. Trilon filed a notice of appeal, but the parties subsequently reached an agreement to adopt the CO's figure. Significantly, a copy of defendant's agreement to resolve the dispute was sent by the Government not to Franklin or the SBA but to plaintiff.

However, plaintiff and defendant failed to agree on plaintiff's right to receive the $62,181.37. Defendant claimed that it had sufficient set-offs[5] to obliterate plaintiff's entitlement to the award. Plaintiff countered that the technical manuals contract contained set-off protections enabling it to receive the $62,181.37, free of defendant's set-off claims.

On December 3, 1973, defendant submitted this question to the General Accounting Office (GAO). The Comptroller General held that plaintiff could recover $7,812 free of defendant's set-off claims.[6] However, the GAO disallowed the balance of the $62,181.37 on the basis that plaintiff was precluded from use of the set-off protections because it had not participated in the financing of the technical manuals contract. Since plaintiff had not extended funds toward the contract, reasoned the GAO, plaintiff could not assert the set-off protections contained in the Assignment of Claims Act and the ASPRs. Comp. Gen. Dec. B–180271 (Aug. 22, 1974).

Plaintiff then brought the instant action in its own name[7] to recover the $54,369.37

---

4. The $52,812 represented Franklin's remaining risk on the $125,000 loan. To make the payment plaintiff released its priority rights to the $45,000 check and paid Franklin an additional $7,812 in cash.

5. At this time, Trilon owed the IRS $157,312.73 and was also indebted to the Government for unliquidated progress payments on an unrelated Government contract in the amount of $213,211.49.

6. The GAO decision casts plaintiff's recovery in terms of "assignee-principal" or "beneficiary-principal." However, its reasoning appears to be based on a subrogation theory. According to the GAO, Franklin by virtue of the 1967 assignment was entitled to receive $125,000 from the Government or Trilon, without set-off. Franklin had received all but $7,812 of the

$125,000 at the time of the refinancing. When plaintiff paid Franklin the $7,812 it stepped into Franklin's shoes and obtained the right to receive $7,812 in Government contract proceeds free of set-offs. The fact that Franklin had been paid the $7,812 did not void defendant's liability for this amount because defendant was a stranger to the refinancing and so far as the Government was concerned, still owed Franklin the $7,812.

7. Neither the European-American Bank & Trust Co. (as purchaser of certain Franklin assets) nor the Federal Deposit Insurance Corp. (as transferee of other Franklin assets) appeared in this action, despite the issuance of Ct. Cl. Rule 41(a)(1) notices to appear as parties. In fact, the FDIC's response indicates that neither it nor Franklin has any such interest.

($62,181.37 less $7,812) plus interest, disallowed by the GAO.[8]

## II

### Assignment of Claims Act

On rehearing, defendant's only point is that the set-off protections of the Assignment of Claims Act, 31 U.S.C. § 203 (1970) and 41 U.S.C. § 15 (1970), are not available to this plaintiff.[9] We therefore consider that problem first.

Trilon's technical manuals contract included by reference the standard financing and assignment provisions provided in the Armed Services Procurement Regulations (ASPRs). Drafted with an eye to the Assignment of Claims Act, the ASPRs permit assignment and reassignment in certain instances. They also grant set-off protection to assignees:

[I]f this contract provides for payments aggregating $1,000 or more, claims for monies due or to become due the contractor from the Government under this contract may be assigned to a bank, trust company, or other financing institution, * * * and may thereafter be further assigned and reassigned to such institution. Any such assignment or reassignment shall cover all amounts payable under this contract and not already paid, and shall not be made to more than one party, except that any such assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in such financing. Unless otherwise provided in this contract, *payments to an assignee of any monies due or to become due under this contract shall not, to the extent provided in said [Assignment of Claims] Act, as amended, be subject to reduction or set-off.* [ASPR ¶ 7–103.8 (1962) (emphasis added)].

This ASPR is based on the Assignment of Claims Act, 31 U.S.C. § 203 (1970) and 41 U.S.C. § 15 (1970). As a general rule, the Act prohibits assignments of claims against the Government. However, it is common ground that Congress has provided for certain assignments in order to encourage financing of Government contracts and has granted set-off protection rights to eligible assignees:

The provisions of the preceding paragraph [invalidating assignments of claims against the Government] shall not apply in any case in which the moneys due or to become due from the United States * * under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution * * * : *Provided,*

\* \* \* \* \* \*

3. That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing;

\* \* \* \* \* \*

\* \* \* [P]ayments to be made * * * to an assignee of any moneys due or to become due * * * shall not be subject to reduction or set-off for any liability of any nature of the assignor to the United States * * * which arises independently of such contract * * *. [31 U.S.C. § 203 (1970) and 41 U.S.C. § 15 (1970) ].

It is these statutory provisions containing the set-off protection language, as incorporated into the technical manuals contract through the ASPR cited above, that plaintiff relies upon.

---

8. Plaintiff's petition seeks $55,188 plus interest. However, this appears to be based upon an erroneous figure attributed to the CO's award and plaintiff's summary judgment brief revises the claim to $54,369.37.

9. The defendant no longer argues that plaintiff has no standing at all to sue or that it is unable to recover in the capacity of Franklin's subrogee. *See* Part III of this opinion, *infra.*

■ There are, however, two barriers to plaintiff's invocation of the Act. The first is that plaintiff was neither an assignee nor a reassignee under the statute or the contract clause. Franklin was, of course, the original assignee. First National City Bank never became a proper reassignee because Franklin refused (in 1971) to release its prior assignment and on that ground the Government would not accept the attempted reassignment to First National. If one thing is clear under the statute and the clause, it is that, with respect to any individual contract, there can be only one assignee at a time (with the exception, to be discussed *infra*, of other parties "participating in such financing").[10] Since Franklin insisted on retaining its own assignment, plaintiff could not take over directly under the Act or the contract. Franklin alone remained the assignee and alone had the statutory rights of the assignee.

■ Even if it is not itself the assignee, plaintiff urges that it is and was a party "participating in such financing" under the provisions of the Act and the contract authorizing an assignment to be made "to one party as agent or trustee for two or more parties participating in such financing." Franklin, it is said, was and could be a trustee for First National because the latter participated in the general financing of Trilon's government contracts.

We reject this overly broad reading of "participating in such financing," and instead confine that concept to a lender whose loan was used, or was available for use, in financing the particular government contract under which suit is brought. Admittedly, the plaintiff's loan to Trilon was not used and was not available—and could not be—for the technical manuals contract

on which this suit is founded since that agreement was fully performed about a year (1968) before First National City Bank even undertook to finance Trilon (1969).[11]

We reach this interpretation on both the text and the purpose of the statute.[12] The portion of the 1940 Assignment of Claims Act which permits assignment to financial institutions is entirely written in terms of a single government contract which is being financed be a lender or a group of lenders—not in government-wide terms. The statutory concept is that of financing a specific government contract, not of the financing of government contracts in general or across-the-board, or the financing of all of a contractor's contracts as a lump. The immediate context of the phrase "participating in such financing" relates to the financing of the particular contract on which the statutory provision centers; grammatically and naturally, "such" refers back to the financing of that particular contract and "financing" likewise refers to the financing of that individual contract, not other contracts of the same contractor or contracts generally. It is, of course, too much of a strain to think of plaintiff as financing the technical manuals contract, all the work on which was done and finished a year before First National came into Trilon's world.

■ The objective of the 1940 Act was to authorize the financing of individual government contracts in the sense that Congress wished the holder of such a pact to be free to receive financial help in performing his agreement in reliance on the security of the expected government payments from that contract. At the same time Congress did not, we think, wish to eat into the Government's normal right of set-

10. The Act, *supra*, provides that any assignment permitted by the statute "shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing * * *." The ASPR clause, *supra* contains the same requirements which were imposed to prevent multiple claims on the

same contract and to avoid multiplicity of actions. *See Consumers Ice Co. v. United States*, 475 F.2d 1161, 1163, 201 Ct.Cl. 116, 119 (1973).

11. First National had nothing to do with the technical manuals contract until September 1971 when it paid off Franklin, the recognized assignee.

12. The pertinent ASPR and the contract clause do not deviate from the statute.

off against the assignor more than would be necessary to induce such monetary aid in performing. Where a contract has been fully completed, further aid is not needed for that contract and there is no occasion to give up the right of setoff.

This was the theory at the bottom of one of the court's holdings in *Coleman v. United States*, 158 Ct.Cl. 490 (1962). The question there was whether the contractor had actually received and used the funds to promote the completion of the contract before the court. Laying down its basic premise, the court said: "The Act was designed to make funds available to a contractor with which he could *complete his government contract*. If the loan is used for another purpose, the objectives of the Act are not satisfied." *Coleman v. United States, supra*, 158 Ct.Cl. at 496 (emphasis added). The court went on to absolve the lender if the contractor, after receiving the money, diverted it to other purposes instead of using it to advance performance of the contract. But it is crystal clear that in the court's view the assignment would be defeated if the lender had reason to know in advance that the loan proceeds could not be used in completing the contract. *See* 158 Ct.Cl. at 497. That is the situation here since there is no doubt that First National was aware, or at least should have been aware, that Trilon had already completed the technical manuals contract.

Plaintiff challenges *Coleman*,[13] but we think it was correctly reasoned and decided, and we adhere to its rationale and teaching.

This view does not mean that loans must be tied to particular contracts nor does it go counter to the endorsement of the revolving-credit plan in *Continental Bank & Trust Co. v. United States*, 416 F.2d 1296, 189 Ct.Cl. 99 (1969). In all of our prior cases, including *Continental Bank*, which have upheld the financing institutions' right to re-

cover free of setoffs, the loans were made before the completion of the particular contract and were available to help in the performance of that work—even though the loans may not have been tied to, or designated as directed to, a or the specific contract. The same is true of the "five-chambered house of horrors" plaintiff has included in its brief; with the exception of one-half of one of the five examples, in all those situations the loan is and can be available for all non-completed government contracts of that contractor-borrower, and therefore the financial institution can avail itself of the right of recovery free of setoff. It is only where the contract has been fully performed before the loan is made[14] that the institution cannot call upon that right under that particular contract. The reach of the rule is thus not nearly as wide as the plaintiff asserts. On the other hand, it should be noted that the plaintiff's broader view of the 1940 Act would allow a setoff-free recovery by plaintiff under the technical manuals contract even though First National had refused to pay Franklin off in 1971, and although the contract had been fully performed a decade before First National had any dealings with Trilon.[15]

For these reasons, we hold that plaintiff does not belong within the class of assignees or of those "participating in such financing" under the 1940 Act, and has no rights under that statute.

## III

### *Subrogation*

Plaintiff also puts itself forward, apart from the 1940 Act, as the subrogee of Franklin which it paid off in 1971. To the extent of the payments made by plaintiff to Franklin at that time, we hold that First National was subrogated to Franklin's

---

13. On the reargument, plaintiff's counsel conceded that *Coleman* could not properly be reconciled with his position.

14. And perhaps where the loan agreement explicitly forbids use of the loan on a specific contract.

15. Unfortunately, it is not unknown that claims under a contract take ten years or more to proceed through the administrative and judicial processes.

rights under the latter's assignment from Trilon.[16]

As a general rule, subrogation applies where a party not acting voluntarily, but under some compulsion pays a debt or discharges an obligation for which another is primarily liable and which in equity and good conscience ought to be discharged by the latter. *See, e.g., Compania Anonima Venezolana de Navegacion v. A. J. Perez Export Co.,* 303 F.2d 692, 697 (5th Cir. 1962). In such circumstances, the subrogee "stands in the place" of the original creditor and obtains equivalent but no greater rights against the debtor than held by the original creditor. *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947).

It is true that a volunteer may not obtain subrogation rights; payment of the debt must result from some compulsion. *Prairie State Bank v. United States,* 164 U.S. 227, 231, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *Aetna Life Ins. Co. v. Middleport,* 124 U.S. 534, 549, 8 S.Ct. 625, 31 L.Ed. 537 (1888); *Anderson v. United States,* 97 Ct.Cl. 545, 550 (1942). But subrogation will be applied in favor of parties who act to protect their own interests. One who pays another's debt to protect his own rights and interests is not ordinarily considered a volunteer and may be subrogated to the creditor's rights. *Federal Deposit Ins. Corp. v. American Surety Co.,* 39 F.Supp. 551 (W.D. Ky. 1941). *See also Nippolt v. Farmers' &*

*Merchants' State Bank,* 186 Minn. 325, 243 N.W. 136 (1932) (bank agreeing to pay mortgage to protect other security interests held entitled to assignment of note and mortgage).

Clearly, under this principle plaintiff was no volunteer. It did not pay Trilon's debt as a volunteer but did so to protect its own interests in the prior loans made to Trilon. Both Franklin and Trilon faced severe economic difficulties in 1971. Franklin had called its loans to Trilon and had threatened to call the SBA's. If Franklin had persisted, Trilon might have been forced into receivership or bankruptcy, endangering plaintiff's loans to Trilon.[17]

It is no answer that to recognize subrogation here would subvert the limitations of the old anti-assignment part of the Assignment of Claims Act. On the facts, there is no contradiction of the aims of the original, historic anti-assignment law in allowing this plaintiff to recover as subrogee. The statutory purposes of that old legislation are to prevent fraud, control multiple litigation, and confine the government's dealings to a very limited number of persons or entities. *United States v. Shannon,* 342 U.S. 288, 291–92, 72 S.Ct. 281, 96 L.Ed. 321 (1952); *Consumers Ice Co. v. United States,* 475 F.2d 1161, 1163, 201 Ct.Cl. 116, 119 (1973). In this particular instance, the Government, before the suit was brought, had already elected to deal with plaintiff

---

**16.** The defendant no longer contests plaintiff's right as a subrogee to recover what it paid to Franklin free of setoff.

**17.** Defendant originally argued that plaintiff's release of the $45,000 check to Franklin (*see* Part I, *supra* ) constituted a payment *by Trilon* to Franklin and Franklin was discharged to the extent of $45,000. To support this contention defendant cited the proposition that payment by a third party of a debt using funds of the debtor is equivalent to payment by the debtor, not the third party. *Krichbaum v. United States,* 138 F.Supp. 515, 518 (E.D. Tenn. 1956). The check was drawn by Trilon, payable to Franklin with plaintiff as payor bank. According to defendant's earlier argument, plaintiff's release of the check (by paying Franklin the $45,000) was payment by a third party (plaintiff) of a debt (to Franklin) using the debtor's

(Trilon's) funds. This contention ignored one crucial fact. Plaintiff held a prior claim to the $45,000 based upon its right of setoff:

" * * * [T]he right of a bank to a lien against money deposited with it and the right to set off a deposit against the depositor's indebtedness to the bank are part of the law merchant * * *." [*Kaufman v. First National Bank,* 493 F.2d 1070, 1071 (5th Cir. 1974) (citation omitted) ].

In short plaintiff held the check subject to its right to set off the loans previously made to Trilon. Trilon could not demand that plaintiff pay this sum over to Franklin. When plaintiff paid the $45,000 it did so, in effect, not with Trilon's money but with its own.

with respect to the technical manuals contract. As we point out *supra,* defendant sent a copy of the agreement resolving the dispute (over additional compensation on the technical manuals contract) not to Franklin or the Small Business Administration but to plaintiff; the defendant also haggled with plaintiff over whether the latter should have priority before any setoff; and the GAO appears in effect to have determined that First National was at least entitled to $7,812 without any setoff. Thus, by its own choice defendant treated First National as an interested party. Where that has happened it seems an unwholesome technical rigidity to apply the principles underlying the pre-1940 anti-assignment statute to lock the barn after the horse has deliberately been let out by the Government's own officials.

We therefore allow plaintiff to recover that part of the monies it paid to Franklin in 1971 which it has not yet recovered.

## IV

### *Interest*

Plaintiff also seeks recovery of accrued interest. Originally, defendant countered that if plaintiff's recovery is based on subrogation, we cannot award interest because Franklin's right to receive interest terminated at the time of the refinancing. However, neither plaintiff nor defendant has focused on the interest question in any detail in their arguments.[18]

■ We note first that, of course, plaintiff is not entitled to recover interest on a claim against the Government absent a showing that it held a right to collect interest under a statute or contract so providing. This requirement is based both on statutes and case law. 28 U.S.C. § 2516 provides:

> Interest on a claim against the United States shall be allowed in a judgment of the Court of Claims only under a contract or Act of Congress expressly providing for payment thereof.

*See also United States v. Mescalero Apache Tribe,* 518 F.2d 1309, 207 Ct.Cl. 369 (1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976).

■ In the instant case plaintiff has cited no statute or contract provision which would entitle it to interest on a judgment in its favor. Normally, we would be forced to deny such interest claims. However, defendant seems to concede that Franklin held a right to receive interest on the technical manuals contract proceeds. It says that such right terminated at the time of the refinancing. Unhappily, we do not have the specific provisions of the technical manuals contract before the court, other than those dealing with the assignments.

As discussed in Part III, *supra,* plaintiff has succeeded to Franklin's rights against defendant insofar as it has paid Franklin. Such derivative rights are not obliterated by the fact that plaintiff paid Franklin during the refinancing. Thus if Franklin held a right to receive interest, plaintiff would step into Franklin's shoes and would be entitled to recover interest in the present action. The only problem is that from the present state of the record we cannot ascertain Franklin's rights to obtain interest under the technical manuals contract. Where the evidence before the court is not meaningfully correlated to an ultimate issue in the case, summary judgment cannot be granted on such issue and a remand to the trial judge for further proceedings is required. *Cheyenne-Arapaho Tribes v. United States,* 512 F.2d 1390, 1397, 206 Ct.Cl. 340, 353 (1975).

Accordingly, we must remand the issue of interest to the trial judge for a determination of plaintiff's derivative entitlement based on rights held by Franklin. Should it appear from additional evidence that Franklin could recover interest on the technical manuals contract proceeds, plaintiff will be entitled to receive interest on the amount it is entitled to recover as subrogee under Part III, *supra.*

---

18. The issue was not mentioned on the reargument and both parties apparently accept the disposition of that point made by the panel decision (without dissent). We follow the panel disposition.

## CONCLUSION

Plaintiff's motion for summary judgment is granted in part (as provided in Part III, *supra*) and denied in part (as provided in Part II, *supra*). Conversely, defendant's cross-motion is denied in part and granted in part. The amount of recovery (including the interest issue) is remanded to the Trial Division for further proceedings under Rule 131(c) consistent with Parts III and IV of this opinion.

NICHOLS, Judge, dissenting:

Upon comparing the *en banc* court's opinion with the one written for the panel by Judge Kunzig, and now vacated, I continue to think the latter was correct and should have been reaffirmed.

There is no disagreement that, after plaintiff paid Franklin off to avert Trilon's being thrown into bankruptcy and the further performance of its later contracts thus frustrated, plaintiff had equitable rights. While this court has no jurisdiction to entertain bills in equity, it may apply equitable doctrines in the adjudication of lawsuits, in the manner usual with American courts. We have the authority of Judge Madden that this includes suits by assignees under the Assignment of Claims Act to obtain contract payments free of set-off. *Chelsea Factors Inc. v. United States*, 181 F.Supp. 685, 149 Ct.Cl. 202 (1960). After being paid off in full, Franklin had no further enforceable rights as assignee. *Beaconwear Clothing Co. v. United States*, 355 F.2d 583, 174 Ct.Cl. 40 (1966). I think First National City Bank could have gone into a Federal or state court, having equity jurisdiction, and obtained an order requiring Franklin to execute a reassignment in proper form. This is what I understood Judge Kunzig to imply in holding that First National was a "beneficiary," a term also used by Judge Madden. Though this was not actually done, we are not precluded from correcting the record to show it was done, because it should have been. 28 U.S.C. § 1491, as amended by Pub. L. 92–415, 86 Stat. 652. The effect of such a correction would have been that First National was a duly ordained re-as-signee, a status fully recognized by the statute and the ASPR provision. It is not apparent to me in what way such a correction would frustrate the Assignment of Claims Act policy or violate any express provision thereof.

As to one not thus recognizable as an equitable re-assignee, the court's subrogation theory would be in my view somewhat of a misguided missile, opening up this court to a variety of possible claimants not within the Congressional policy. For example, a subrogee would not have to be a financial institution. One who is an equitable re-assignee does not need the subrogation theory to prevail.

If the same bank had been the assignee throughout, it could have invoked the no set-off provision with respect to contract payments, although the funds advanced for performance of that contract has been repaid already. *Continental Bank & Trust Co. v. United States*, 416 F.2d 1296, 189 Ct.Cl. 99 (1969). Thus the bank could maintain a continuing revolving credit financing device which did not attempt to link particular advances of money to contracts. I take it, the court ought to concede, if First National City Bank had become a proper formal re-assignee, it would have enjoyed all the rights of the original assignee. Thus, if the contract contained appropriate language, permitting re-assignment, it would not be necessary for the re-assignee, rather than the original assignee, to have advanced the funds used for performance of that contract, to recover the contract payments with offset protection. Nor would it matter if the contract was completely performed before the re-assignment took effect. The court uses some language about this which may be to the contrary. I am not sure whether the discussion of these matters is pointed solely at the situation the court has already found existed, that First National City Bank was not a proper re-assignee, or whether it is saying that even if it had been, it is still cut off a second time, at another pass. If this is the view the court means to take, I protest.

It seems obvious that re-assignment is sometimes going to be necessary. As happened here, banks may be in trouble and be obliged to reduce their commitments. They may reorganize, or merge. If occurrence of a re-assignment, no matter how formally perfect, frustrates the revolving credit arrangements we approved and protected in *Continental Bank & Trust Co., supra,* the liberal intentions of the Congress, so often referred to in our opinions, are frustrated. The statute leaves the possibility of a re-assignment open, and the ASPR provides for it. It is not apparent how a re-assignment opens any floodgates or in anyway jeopardizes the restrictions Congress enacted to limit assignments as such. I do not see why we should take such a hostile position. If, however, we limit our holding to the actual situation of an incomplete or imperfect re-assignment, we leave it in the power of parties in the future to protect themselves by full performance of the formalities we deem so important. I think the imperfections here were correctable in equity, but if the court thinks otherwise, and stops there, that is error but nowhere near so serious as the present opinion in its totality.

KUNZIG, Judge, dissenting:

I respectfully dissent from the majority opinion of the *en banc* court to the extent that it conflicts with the decision of the original panel. I therefore concur in Judge Nichols' dissent and adhere to my previous opinion, 537 F.2d 426, 210 Ct.Cl. 375 (1976).