RELIANCE INSURANCE COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

VALLEY BANK, Third–Party Plaintiff,

v.

The UNITED STATES, Defendant.

No. 379–86C.

United States Claims Court.

June 2, 1988.

L.H. Vance, Jr., Spokane, Wash., attorney of record for plaintiff. Winston & Cashatt, of counsel.

Wayne V. Meuleman, Boise, Idaho, attorney of record for third-party plaintiff. Meuleman & Miller, of counsel.

E. Richard Southern, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, attorney of record for defendant.

## OPINION

LYDON, Senior Judge:

The dispute in this contract case centers on entitlement to certain contract funds, held by the Corps of Engineers. The claimants to these funds are the plaintiff (Reliance), a surety for the contractor; the third-party plaintiff (Valley Bank), an assignee of the contractor; and the Internal Revenue Service (IRS), a creditor of the contractor. The contractor, Monument Holding Company (Monument), although served with a Rule 14 Notice to appear and participate in this litigation, failed to do so, and is not a party in this case. At oral argument the court was advised that the contractor was in bankruptcy and that the trustee in bankruptcy abandoned any claim the contractor might have.

Plaintiff, the surety, has filed a motion for partial summary judgment contending that as between it and the assignee, it is entitled to the contract funds retained by the Corps of Engineers. Valley Bank, the assignee has moved for partial summary judgment against plaintiff, the surety, contending it is entitled to the contract funds in dispute.[1] Both the surety and the assignee assert that there are no controverted issues of facts which would serve to preclude the entry of partial summary judgment in their favor. Discovery was had by and/or available to all parties. Defendant has responded to both motions and supports the position of the surety on the facts of this case. Defendant has not moved for summary judgment on its counterclaim wherein it asserts the claim of the IRS to a portion of the contract proceeds relative to the contractor's tax indebtedness. Upon consideration of the submissions of all parties, and after oral argument, the court concludes that plaintiff's partial motion for summary judgment should be granted and third-party plaintiff's partial motion for summary judgment should be denied.

## Facts

On March 9, 1984, the Army Corps of Engineers (Corps) entered into a construction contract with Monument. The contract price was $2,541,975. The contract involved work on the Tucannon River Satellite Facility (Tucannon contract). Plaintiff, as a surety, issued both performance and payment bonds, executed on March 16, 1984, to Monument relative to the above contract. The bonds were found legally sufficient, in proper form, and therefore were duly executed by the Corps on June 4, 1984.

In early April 1985, plaintiff, as surety, was asked by Monument to finance Monument's completion of the contract. In late March or early April 1985, plaintiff began to receive notices of claims against the payment bond it issued to Monument. By letter dated April 4, 1985, plaintiff requested the Corps to cease making any further payments on the Tucannon contract to Monument without prior written consent of plaintiff. In this letter plaintiff informed the Corps that Monument had requested

---

1. In their complaints, and indeed in the format and thrust of their partial motions for summary judgment, plaintiff and the third-party plaintiff apparently seek declaratory judgment relief. For example, Valley Bank, the third-party plaintiff, seeks an order from the court holding that plaintiff wrongfully interfered in the contract between Monument, the contractor, and the United States. This court is without jurisdiction to enter a declaratory judgment under the circumstances of this case. *United States v. King*, 395 U.S. 1, 3–5, 89 S.Ct. 1501, 1502–03, 23 L.Ed. 2d 52 (1969); *Williams Intern. Corp. v. United States*, 7 Cl.Ct. 726, 728–31 (1985). Despite the implications of plaintiff's partial motion for summary judgment and the third-party plaintiff's partial motion for summary judgment which seek a resolution of the relative rights of only the surety and the assignee, *see Rolls-Royce, Ltd. v. United States*, 176 Ct.Cl. 694, 698, 701, 364 F.2d 415, 417–18, 419–20 (1966) (court does not have jurisdiction over actions by plaintiff against third parties or vice-versa), the court views this litigation as money oriented, i.e., disputed claims of entitlement to contract retainage. The court shall treat plaintiff's motion and the third-party plaintiff's motion as motions for partial summary judgment seeking entitlement to the funds held by the Corps.

plaintiff to assist it in completing its performance of the Tucannon contract. The Corps was further informed that plaintiff had received a claim on its payment bond. Plaintiff advised that when it completed its investigation of the matter it would immediately contact the Corps. The Corps, through its contracting officer, responded on April 9, 1985, to plaintiff's April 4, 1985 letter advising that withholding of contract payments was governed by Federal Acquisition Regulations (FAR) 28.106-7 and required (1) completion of the work, (2) notice of specific failure to meet obligations, and (3) agreement from the surety to hold the government harmless from any liability resulting from withholding the final payment. The Corps further advised that upon written instructions from the contractor, payment checks may be made to the surety.

On June 17, 1983, Valley Bank and Monument executed a "Security Agreement Covering Revolving Accounts Receivable." In an undated letter to the Corps, enclosing a copy of the above Security Agreement, Valley Bank requested that any further payment to Monument be made directly to Valley Bank. A telephone conversation between Valley Bank and the Corps on April 10, 1985 resulted in an April 10, 1985 letter from the Corps to Valley Bank enclosing the forms, together with instructions, necessary for filing a proper "Assignment Of Claim" and "Notice Of Assignment" of claim. In the April 10, 1985 letter, the Corps also instructed Valley Bank to send a "Notice Of Assignment" to plaintiff, the surety. On April 12, 1985, Valley Bank filed a properly executed "Notice Of Assignment". The Corps acknowledged receipt of the "Notice Of Assignment" on April 19, 1985. Plaintiff claims it was not sent a copy of this "Notice" and did not obtain a copy of the same until after the instant litigation commenced. Valley Bank contends it sent plaintiff a copy of its "Notice".

On May 21, 1985, the Corps forwarded to Monument for signature Progress Payment Estimate No. 14 (dated May 20, 1985), in the amount of $165,059, indicating that the Corps was withholding (retainage) $20,000

for correction of remaining job deficiencies. The amount of pay estimate No. 14 reflected work performed by the contractor during the period April 1–30, 1985. Subsequently, by contract modification in late 1986 in order to effect administrative closing of the contract, this amount was reduced to $145,059 reflecting an adjustment for deficiencies which were corrected by means other than under the contract.

On May 28, 1985, plaintiff, as surety, requested the Corps to withhold payment of Progress Payment No. 14. Plaintiff informed the Corps that it had received claims from seven (7) subcontractors and/or suppliers of Monument stating that Monument had failed to meet obligations to them. Plaintiff also advised that it agrees to hold the government harmless relative to liability for withholding the final payment due Monument under the Tucannon contract. Plaintiff further noted its understanding that work on the contract had been completed, and that Progress Payment No. 14 was the last significant payment due under the Tucannon contract and thus could be properly deemed to be the final payment under the contract as that term is used in the applicable regulations.

On June 4, 1985, the Corps advised Monument that pursuant to plaintiff's request, as surety, it was withholding Progress Payment Estimate No. 14 and any subsequent payment until the Corps received further instructions from Monument, its surety, and its assignee. Subsequently, the Corps advised the above interested parties that it would hold the payments due on the Tucannon contract until the matter of entitlement thereto was resolved by agreement of the parties or a judicial determination.

On July 1, 1985, the Corps advised Monument that, with the exception of a few minor deficiencies, all work on the Tucannon contract was now complete. Monument never performed any of the noted deficiency work. The Corps expressed appreciation for the fine job Monument did on the contract.

By letter dated July 12, 1985, Valley Bank demanded payment of Tucannon con-

tract proceeds in accordance with the Assignment of Claim it filed with the Corps on April 12, 1985. Valley Bank did not indicate how much money, if any, it loaned Monument to assist it in performing the Tucannon contract. There is a dispute between the parties as to whether or not any of the loans made by Valley Bank to the contractor were utilized by the contractor in performing the Tucannon contract. There is no indication in the materials before the court that Valley Bank loaned Monument any monies for use on the Tucannon contract subsequent to April 12, 1985.

By letter dated July 23, 1985, plaintiff, through its legal counsel, advised the Corps that Monument would not provide the Corps with written direction to send the check for pay estimate No. 14 to plaintiff. Plaintiff further advised that as of July 23, 1985, it had received claims against Monument on the Tucannon contract in excess of $257,000, which amount greatly exceeded the $158,000 covered by pay estimate No. 14. Plaintiff stated it had paid some of the claim amounts and was in the process of verifying the remaining claims. Plaintiff asked the Corps to remit to it, as surety, the amounts currently due Monument under the Tucannon contract, and agreed to indemnify the Corps from liability if it did so. Plaintiff eventually paid claims in excess of $270,000 on the Tucannon contract. The materials before the court indicate that plaintiff paid these claims under its Payment Bond obligations, and at oral argument plaintiff's counsel stated that the claims did in fact arise under its Payment Bond obligations.

On August 6, 1985, the IRS served a Notice of Levy on the Corps of Engineers in the amount of $51,407.62 for taxes owed by Monument for the last quarter of 1984 and the first two quarters of 1985. The Notice of Levy does not identify the source or nature of this tax indebtedness. The Corps of Engineers was unable to determine whether the tax obligations refer to the Tucannon contract alone or include other contracts or obligations of Monument. It appears that Monument was performing work as a subcontractor on another Federal Government project (Sawtooth National Fish Hatchery contract) during the 1984–85 period and the IRS had also served a Notice of Levy on funds due Monument or its assignee on that project as well. The materials before the court do not show whether these two levies cover the same taxes or whether they are involved in any way with the performance of the Tucannon contract.

On August 15, 1985, the IRS sent the Corps a Request For Offset of contract proceeds on the Tucannon contract against the tax indebtedness of Monument. The IRS amended its Request For Offset on April 3, 1986, increasing Monument's tax indebtedness to $62,184.08 plus accrued interest and penalties per diem and per month from April 10, 1986. As of October 6, 1986, Monument's tax indebtedness increased to $83,263.83. The IRS sought payment from the Corps of Monument's tax indebtedness from contract proceeds due Monument for performance of the Tucannon contract contending it had a superior claim to the funds than either the surety or the assignee. In its brief the Government advises that the Corps currently hold $177,874 as the contract balance due under the Tucannon contract. As of June 1985, the Corps has held the contract balance as a stakeholder.

### Discussion

#### –A–

Plaintiff's and the third-party plaintiff's motions for partial summary judgment seek adjudication of who, as between the plaintiff, a surety, and the third-party plaintiff, an assignee, is entitled to contract proceeds retained by the Corps of Engineers. On the facts outlined above, the court concludes that the surety's right to the contract proceeds in issue is superior to those of the assignee, Valley Bank.

█ It has been held that the rights of a surety growing out of its liability on its Payment and Performance Bonds attach from the date of the contract. *Prairie State Bank v. United States*, 164 U.S. 227, 232, 17 S.Ct. 142, 144, 41 L.Ed. 412 (1896); *Royal Indemnity Company v. United*

*States*, 117 Ct.Cl. 736, 746, 93 F.Supp. 891, 894 (1950). The Tucannon contract was dated March 9, 1984. Thus, plaintiff's rights as a surety became fixed as of that date or at the latest as of the giving of the bond on March 16, 1984 or acceptance by the Corps on June 4, 1984. *See Dependable Insurance Company, Inc. v. United States*, ·846 F.2d 65, 67 (Fed.Cir.1988). Third-party plaintiff assignee's assertion that plaintiff surety's claim to the contract proceeds which it presented to the contracting officer constituted a wrongful interference with the rights of the assignee to the proceeds is clearly without merit. The surety had as much right as the assignee to make demands for payment on the contracting officer under the existing circumstances.

 It is not clear from Valley Bank's submissions whether it is basing its right to the Tucannon contract proceeds in issue on a general assignment it received from Monument, the contractor, dated July 17, 1983, which was well before the date of the Tucannon contract, i.e., March 9, 1984, or on the April 12, 1985 Notice of Assignment it submitted to the Corps of Engineers relative to the Tucannon contract, or on both assignments. It is settled that the third-party plaintiff's rights, as assignee, attach from the date the assignee filed a proper Notice of Assignment together with a properly executed assignment, in conformance with the Assignment of Claims

Act of 1940, as amended, 41 U.S.C. § 15 (1982); *see also* 31 U.S.C. § 3727 (1982).[2] *See Royal Indemnity Company v. United States, supra*, 117 Ct.Cl. at 745, 93 F.Supp. at 894. Accordingly, the third-party plaintiff's rights as an assignee became fixed as of April 12, 1985, the date it filed its Notice of Assignment and a true copy of the instrument of Assignment with the contracting officer, Corps of Engineers, as required by the Assignment of Claims Act, *supra*.

 Since the equity of the plaintiff-surety arose at the very latest on June 4, 1984, the third-party plaintiff-assignee took its assignment with knowledge of and subject to the equity of the surety.[3] The contract proceeds must be paid to the claimant with the superior right. As between the plaintiff-surety and the third-party plaintiff assignee, on the facts of this case, the plaintiff-surety has the superior right. *Royal Indemnity Company v. United States*, 178 Ct.Cl. 46, 49–50, 371 F.2d 462, 464, *cert. denied*, 389 U.S. 833, 88 S.Ct. 33, 19 L.Ed.2d 93 (1967); *see also, Argonaut Insurance Co. v. United States*, 193 Ct.Cl. 483, 496–98, 434 F.2d 1362, 1369–70 (1970).[4] Contrary to the contention of the third-party plaintiff, Valley Bank, the assignee, the surety's priority over the assignee in situations such as are present in the case at bar prevails whether the surety's right is ground on its payment bond or on its performance bond. *See Balboa Ins. Co. v.*

**2.** For a discussion as to the distinction between these two code sections *see Tuftco Corp. v. United States*, 222 Ct.Cl. 277, 284–85, 284 n. 4, 614 F.2d 740, 744–45, 744 n. 4 (1980).

**3.** Payment and performance bonds are required by the Miller Act of all government contractors. The assignee Bank is charged with knowledge of this law. *See Royal Indemnity Company v. United States*, 117 Ct.Cl. 736, 746, 93 F.Supp. 891, 894 (1950).

**4.** As a result of this conclusion, it is not necessary to consider plaintiff's contention that Valley Bank's failure to provide it with Notice of the filing of its Assignment of Claim renders said assignment invalid as against plaintiff as surety, citing *New Amsterdam Casualty Company v. Manufacturers & Traders Trust Company*, 330 F.2d 575, 576 (2d Cir.1964). In any event, whether plaintiff received notice from Valley Bank of the April 12, 1985 Assignment Valley Bank sent the Corps is disputed. Should this

matter be deemed material it would not be subject to disposition by summary judgment. Plaintiff surety also notes that Valley Bank, as an assignee, must first prove that the funds it advanced the contractor-assignor were actually used to finance the performance of the contract in question before its rights to contract proceeds are recognized in any event, citing *First National City Bank v. United States*, 212 Ct.Cl. 357, 366–68, 548 F.2d 928, 934–35 (1977); *Coleman v. United States*, 158 Ct.Cl. 490, 497 (1962). *But cf. First National City Bank v. United States*, 212 Ct.Cl. 357, 366–68, 548 F.2d 928, 933–35 (1977) and *Continental Bank and Trust Company v. United States*, 189 Ct.Cl. 99, 416 F.2d 1296 (1969). The court need not deal with this perplexing area of the law in view of the court's holding that the surety's rights to the contract proceeds in question are superior to those of the assignee. ·

*United States,* 775 F.2d 1158, 1162–63 (Fed.Cir.1985); *National Surety Corp. v. United States,* 132 Ct.Cl. 724, 729, 133 F.Supp. 381, 384, *cert. denied,* 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793 (1955). Further, the failure of the contractor to pay its suppliers and material men, which is the situation in the case at bar, constitutes a breach of its contract with the Government and is viewed as a default by the contractor under its contract. Thus, the contractor was in default in late March or early April 1985 when the surety began to receive notices under the payment bond that Monument was not paying its suppliers and materialmen. Under such circumstances, since the assignee stands in the shoes of its assignor, the contractor, the surety's right is superior to that of the assignee to the total unpaid contract balance, whether denoted a progress payment, final payment or simply retainage. *See Great American Ins. Co. v. United States,* 203 Ct.Cl. 592, 598–600, 492 F.2d 821, 824–26 (1974).

Valley Bank, the contract assignee, claims that under applicable Federal Acquisition Regulations (FAR), 48 CFR 28.106–7, the contracting officer was required to pay the disputed contract funds to the contractor's assignee because the contract was being performed when it sent the Corps its Notice of Assignment on April 12, 1985. Plaintiff surety and defendant argue, first that the cited regulations are inapplicable to the Tucannon contract, and second that the contract was completed or substantially completed in early or mid May 1985.

The plaintiff surety and defendant argue that the FAR regulations became effective on April 1, 1984 and thus, under the terms of the regulations themselves, were inapplicable to contracts entered into before April 1, 1984. The contract in issue was entered into on March 9, 1984, prior to the effective date of the FARs. Analysis reveals that this contention, while technically correct, is without significance.[5]

Assuming, *arguendo,* the applicability of the regulations, FAR or 32 CFR, to the contract at issue, the question arises as to whether contract performance was completed or substantially completed during the critical period when the surety and the assignee were asserting rights to the contract proceeds. The surety and the government assert that the contract was substantially completed on April 30, 1985, at which time all but an estimated $20,000 (later reduced to $11,924, see n. 6 *infra.*) of the $2,737,310 (or $2,727,310) final contract price had been earned. However, it was not until June 4, 1985, that the contractor, the surety and the assignee were notified that the Corps was considering withholding Progress Payment No. 14, which was, in effect, at that time part of the final contract payment.

In determining when contract performance was complete or substantially complete in this case, two critical dates surface. The first is June 4, 1985 when the contracting officer advised the contractor he was withholding payment of further contract proceeds until he received further instructions from the contractor, the surety or the assignee. The second is July 12, 1985,

---

5. It is to be noted that the Corps of Engineers in its letter of April 9, 1985, to plaintiff advised that the matter was governed by FAR 28.106–7. FAR 28.106–7 provides, in pertinent part, that "during contract performance agencies shall not withhold payments due contractors or assignees because subcontractors or suppliers have not been paid for work performed or supplies delivered." Similar language was present in regulations which were applicable to the contract in issue, *see* 32 CFR 10–106 (1976) (Armed Services Procurement Regulations (ASPR)), and which provided, in pertinent part: "(a) During performance of the contract the Government will not withhold contract payments due the contractor or his assignee for the reason that sub-

contractors or suppliers have not been paid for work performed or supplies delivered." It seems obvious that the intent of this ASPR language, as well as similar language in FAR 28.-106–7, was to insure that contract performance will not be impeded by haggling over who was to receive contract payments. *See United States Fidelity & Guaranty Co. v. United States,* 230 Ct.Cl. 355, 364, 676 F.2d 622, 628 (1982). The contracting officer's decision to withhold contract payments in this case did not conflict with this intent since his action did not impede contract performance. *Id.* at 371, 676 F.2d at 632. The contract was substantially complete when the contracting officer decided to withhold the contract proceeds in question on June 4, 1985.

when the assignee made its first formal demand for the proceeds in issue.

The contracting officer's action on June 4, 1985, seems to be reasonably within the ambit of the applicable regulations. At the time the Corps determined not to release the final contract proceeds to any of the claimants on June 4, 1985, the materials before the court establish that the contract was essentially complete, though some work deficiency remained to be corrected. This deficiency work was never performed under the contract.

The assignee, as indicated above, argues that since, in its view, contract performance was going on, under the applicable regulations (see n. 5, *supra*), the contracting officer had no choice or discretion but to pay over the contract payments in issue to the assignee. When faced with a like interpretation of regulation language similar to the language in FAR 28.106–7(a) upon which the assignee relies, i.e., that a contracting officer was prohibited from withholding payments for the sole reason that a contractor was delinquent in paying subcontractor and material men, the Court of Claims viewed such an interpretation of the regulation as "open to question". *United States Fidelity & Guaranty Co. v. United States,* 230 Ct.Cl. 355, 371, 676 F.2d 622, 632 (1982) (hereinafter U.S. Fidelity).

Pretermitting for a moment the issue of when the contract was substantially complete, a reasonable answer to the regulation issue surfaced by the assignee can be found in the Court of Claims decision in the *U.S. Fidelity* case *supra*. In the face of language in a regulation similar to the language of the regulation which the assignee relies on in this case, *see* n. 5, *supra*, the Court of Claims stated in pertinent part:

> ... the law in this area has become settled that so long as there is no showing of bad faith or an abuse of discretion, the decision of a Government contracting officer that a progress payment to a financially strapped contractor [or his assignee] should not be withheld [or conversely should be withheld] will be accorded deference by this court and the surety's [or other party challenging the contracting

officer's decision] burden of proving the contrary is high.

230 Ct.Cl. at 365, 676 F.2d at 628.

■ Thus, the real question for consideration is whether the contracting officer's refusal to make any contract payments, despite the demands of the surety and the assignee of asserted rights to said payments, was a reasonable and proper exercise of his discretion. The Corps of Engineers now holds the contract proceeds in issue as a stakeholder as it did when these parties made demand for these proceeds.

On occasion, a trial is necessary to determine whether a contracting officer's exercise of discretion was reasonable and proper. *See U.S. Fidelity, supra,* 230 Ct.Cl. at 365, 676 F.2d at 628. In the case at bar, however, the material facts attendant to the contracting officer's decision to withhold payment of the contract proceeds from demands of three parties are undisputed. On June 4, 1985, when the contracting officer advised the interested parties he was withholding payment, the contract was substantially, if not totally, complete. The contract funds he was withholding were not needed to ensure completion. Under such circumstances, only a legal question existed as to whether his discretion on those undisputed facts was properly exercised. *See Royal Indemnity Co. v. United States, supra,* 178 Ct.Cl. at 50–52, 371 F.2d at 464–65; *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986). Thus, summary judgment is an appropriate vehicle for disposition of this legal question.

The Corps of Engineers, caught in the middle between two competing claimants, had been warned by court decisions that it "cannot, in effect, decide the merits of their claims by the mere physical act of delivering the stake to one of them." *Newark Insurance Co., Inc. v. United States,* 144 Ct.Cl. 655, 658, 169 F.Supp. 955, 957 (1959). *See also Home Indemnity Co. v. United States,* 180 Ct.Cl. 173, 178–79, 376 F.2d 890, 893–94 (1967).

Giving due regard to the language of the regulations, whether FAR or ASPR, the exercise of discretion by the contracting

officer in refusing to decide the merits of who should get the contract proceeds comports with the purpose and spirit of said regulations. At oral argument, counsel for the third-party plaintiff agreed that the actions of the contracting officer in this regard were not arbitrary, capricious or unreasonable. There is no reason or basis for the court on the materials before it not to give deference to the exercise of discretion by the contracting officer relative to retention of the contract proceeds pending judicial determination of who, among competing claimants, should get said funds.

Progress Payment Estimate No. 14, dated May 20, 1985, which covered work performed during the period April 1–30, 1985, was transmitted to the contractor on May 21, 1985 for approval.[6] It was not signed by the contractor until May 28, 1985, when it was returned to the Corps for payment. On May 28, 1985, the surety again requested the Corps to withhold payment on Pay Estimate No. 14 because the contractor had not paid subcontractors and suppliers. In this letter, the surety stated it understood that work on the Tucannon contract had been completed.[7]

On June 4, 1985, the Corps notified Monument that it was withholding further contract payments to Monument as a result of the surety's notice to it that Monument had failed to pay its subcontractors and suppli-

ers. The Corps further advised Monument that "[I]t is incumbent upon you, your bank assignee, and your surety to provide instructions concerning any future disbursement of funds." A copy of the June 4, 1985 letter was sent to plaintiff surety and to third-party plaintiff assignee. At the time the June 4, 1985 letter was sent, Monument was not performing any work on the contract. By letter dated July 12, 1985, Valley Bank, the assignee, made its first demand on the Corps for the payment of Pay Estimate No. 14. In an affidavit by an official of Monument, submitted by the assignee, said official stated that Monument "fully and completely performed all work under the contract as of June 22, 1985, except for certain deficiencies which were thereafter deleted from MHC's (Monument) contract obligations by Modification No. P00019." Accordingly, at the time the assignee demanded payment of the contract proceeds, the contract work clearly was completed.

The total amount unpaid on the contract, about $177,824, which is the amount held by the Corps as a stakeholder, was for work completed by May 10, 1985, with the exception of some fencing work deficiency which ostensibly was completed on an unknown date. The estimated value of this fencing correction work was $1,527. In Contract Modification No. P00019, issued in

---

6. The amount of Payment Estimate No. 14 was $165,059 minus $20,000 for retainage purposes to cover any work deficiencies, for a total of $145,059. The estimate of $20,000 for punch list deficiencies was later reduced to $11,924 under Contract Modification No. P00019. Monument was not required to complete this punch list deficiency work. The final contract price was $2,737,310 (or $2,727,310), although there is some indication in the materials before the court that the final contract price may have been $2,717,365. As of April 30, 1985, the contractor had earned $2,727,106 for contract performance. The last certified payroll, evidencing the last work performed by Monument, was submitted for the week ending May 11, 1985. Only one man employed by Monument was on the site on May 10, 1985. Subsequent to May 10, 1985, the Corps had no inspector on the work site and no additional work on the project was performed under the Tucannon contract. The work project under the Tucannon contract was formally dedicated on June 22, 1985. The assignee in contending that the contract work

was not complete points to a June 21, 1985 letter to a fencing subcontractor by the surety on a $20,869.08 claim. It is reasonable to assume this fencing work was performed prior to June 21, 1985. The surety noted that Monument had paid the fencing company $5,000. The surety in its June 21, 1985 letter enclosed a check for $13,782.17 to the fencing company, advising that the retainage (10% or $2,086.91) would be paid after the fencing company returned to the project to perform remaining, presumably deficiency, work, and approval of said work by the Corps. This isolated incident fails to show that the contract was not substantially complete as of June 4, 1985 or before. It does show that Monument was no longer performing the contract and that the surety was performing Monument's work by trying to get a subcontractor to correct deficiency work.

7. The record suggests that in the normal course, Monument would not have received payment of Pay Estimate No. 14 until around June 20, 1985.

September 1986 to close out the contract administratively and to delete the deficiency work as a contract item, it was stated that "[T]he Contractor substantially completed the contract in May 1985 and essentially demobilized from the project at that time." Nothing has been offered by the assignee to impugn the truth of this statement. The exact amount of the contract retainage is unclear from the materials at hand.

The facts in this case clearly meet the test for deeming the contract to be substantially complete for purposes of determining whether there was compliance with applicable regulations. *See Franklin E. Penny Co. v. United States*, 207 Ct.Cl. 842, 857–58, 524 F.2d 668, 677 (1975); *see also International Verbatim Reporters v. United States*, 9 Cl.Ct. 710, 717 (1986). Corbin sets forth several factors to use as a guide in determining the date of substantial completion. *See 3A, Corbin On Contracts*, §§ 703–705 (1960). The application of those factors in this case point to May 1985 as the latest possible substantial completion date. In particular, by that time, any work deficiencies, which were subcontractor responsibilities, as far as can be determined, were minimal as compared to total performance promised. By April 30, 1985, plaintiff had earned $2,727,106 out of a then estimated total contract price of $2,737,210. Moreover, any remaining work deficiencies had in no way affected the government's receipt of a product fulfilling the main purpose of the contract. The insignificance of the deficiency work is manifested by the fact that it was never done.

On the facts of this case, it is not unreasonable to conclude that the Tucannon contract was substantially completed prior to June 4, 1985 when the Corps notified the parties that it was considering withholding payment of the remaining Tucannon contract proceeds pending instruction from the parties. The assignee flatly refused to support financially the correction of any deficiency work subsequent to April 30, 1985. Counsel for the assignee third-party plaintiff was unable, at oral argument, to advise how much money it advanced the contractor in March and April 1985 in furtherance of performance of the Monument contract. Counsel conceded the assignee advanced no funds to the contractor in May 1985 or thereafter. At oral argument, counsel for the assignee did advise that the assignee did receive from the contracting officer a progress payment for work performed in March 1985. This payment was received after April 12, 1985, when the assignee filed its notice of assignment with the contracting officer.

The surety did not feel it was responsible for seeing to it that the deficiency work be done. However, it indicated it might try to get the subcontractors to go back and do their deficiency work if it could find them and persuade them to do so. These actions also support the view that the contract was substantially complete as of June 4, 1985. Since the regulation, FAR 28.106–7, on which the assignee relies and which the contracting officer believed controlled his actions, stated that contract payments could not be withheld during contract performance, his action in withholding contract proceeds is consistent with and not in violation of FAR 28.106–7. It is not reasonable to believe that the contracting officer would cite a regulation which required that he not withhold contract payments during contract performance and then withhold them if he had not made a determination that contract performance was complete for all intents and purposes at the time he ordered the funds withheld. Since the contract work was completed on June 4, 1985, when the Corps gave notice of its decision to withhold contract proceeds, the withholding was not accomplished "during contract performance" and thus there was no violation of FAR 28.106–7 under the strict and technical interpretation placed on the regulation by the assignee.

Nothing has been alleged, nor is there any suggestion, showing or inference which could be drawn from the materials before the court that even hints that the contracting officer's decision to withhold final payment of the contract proceeds, pending agreement by all the parties or a judicial determination rendered on the mat-

ter, was made in bad faith, was arbitrary and capricious, disregarded the interests of any of the parties, or constituted an abuse of discretion. The assignee does not argue otherwise, and the materials before the court support the above finding. See generally in this regard the *U.S. Fidelity,* case, *supra,* 230 Ct.Cl. at 365–69, 676 F.2d at 628–31. Indeed, in light of the decisions cited above which counsel contracting officers not to decide the merits on their own relative to entitlement to disputed contract proceeds, the decision of the contracting officer was not only reasonable but wise under the circumstances. The discretion of the contracting officer was exercised with due regard to the legal and equitable rights of all the parties involved. That is what the law requires and that is what the contracting officer did in this case. He cannot be faulted for withholding contract proceeds in the face of competing claimants for said proceeds under the circumstances of this case. *See Argonaut Insurance Co. v. United States,* 193 Ct.Cl. 483, 493, 434 F.2d 1362, 1367 (1970).[8]

–B–

Defendant's counterclaim is based on the view that the IRS rights to the contract proceeds in question are superior to the rights of the surety and the assignee. Crucial to resolution of this dispute, as far as the surety is concerned, is consideration of whether the surety's rights emanate from its payment bond or performance bond obligations. The facts, *supra,* clearly show that plaintiff's rights basically grow out of its payment bond obligations. The surety candidly admits this. The distinction between these two types of bonds and the

ramifications attendant thereto were discussed by this court in *Morrison Assur. Co. v. United States,* 3 Cl.Ct. 626, 632 (1983). *See also Aetna Cas. & Sur. Co. v. United States,* 845 F.2d 971, 973–74 (Fed. Cir.1988).

Defendant has not moved for summary judgment on its counterclaim and the surety and assignee suggest that defendant may have no right to any such set off. Plaintiff and the third-party plaintiff moved for partial summary judgment only on the issue of surety vs. assignee entitlement to the contract proceeds. Their motions pretermitted any determination of the rights of the IRS to the contract proceeds. The IRS claim was not fully addressed by the parties. While the matter is not before the court for decision, the court believes some general legal observations on these matters at this time might hasten future resolution of this litigation.

Since plaintiff, as surety, incurred expenses under its payment bond obligations, its right to contract retainages may be subordinate and inferior to the right of the government to set off the amount of taxes owed it by the contractor. *United States Fidelity & Guaranty Co. v. United States,* 201 Ct.Cl. 1, 12, 475 F.2d 1377, 1383 (1973); *Royal Indemnity Co. v. United States, supra,* 178 Ct.Cl. at 49, 371 F.2d at 464; *Barrett v. United States,* 177 Ct.Cl. 380, 384–86, 367 F.2d 834, 836–38 (1966). *See also Dependable Insurance Co. v. United States,* 846 F.2d 65, 67 (Fed.Cir.1988). *Compare Aetna Cas. & Sur. Co. v. United States, supra,* and *Morrison Assur. Co., Inc. v. United States, supra,* (performance bond surety's rights superior to government's tax set off rights). It is important

---

8. The assignee seeks comfort in the fact that the final contract amount, $177,874 consisted of Payment Estimate No. 14 for $145,059 and final payment of $32,815. The materials before the court do not break down this $32,815 figure. It may well represent the total amount of sums retained by the Corps at various times during contract performance for one reason or another. If so, it reflected earned but unpaid retainage. As to the estimate payment, the third-party plaintiff argues the contracting officer was required to turn it over to the assignee. Case law establishes the contrary. During performance of the contract, the contracting officer must

exercise discretion responsibly and must consider the rights of all concerned, not just the assignee's or the surety's or the IRS's or the government's. *See Argonaut Insurance Co. v. United States,* 193 Ct.Cl. 483, 491–96, 434 F.2d 1362, 1366–69 (1970). The contracting officer's exercise of discretion to withhold Estimate No. 14 was, as stated above, reasonable and proper. As to "final payment" proceeds, which the assignee seems to concede belongs to the surety under case law, it is clear that the surety's rights are superior to those of the assignee to such proceeds. *Id.* at 496–98, 434 F.2d at 1369–70.

to note that plaintiff surety's briefs clearly recognize that plaintiff's claim herein is advanced as a payment bond surety claim. At oral argument counsel for plaintiff confirmed this fact. Plaintiff surety makes no claim in its pleading, in its briefs or at oral argument that it paid off the claims in issue under its performance bond.

Plaintiff surety suggests, however, that the tax indebtedness of the contractor may well include taxes generated by contract work other than the Tucannon contract, at issue in this case. This argument assumes, however, that the government's right of set off is limited only to taxes generated by the contract whose retainages are the subject of the litigation. Case law does not seem to support this view. The government here seems to be the best secured of creditors, its security being the justified refusal to pay what it owes the contractor (contract retainages which it controls) until it is paid what is due it (tax indebtedness) from the contractor. *United States v. Munsey Trust Co.,* 332 U.S. 234, 241, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947); *Barrett v. United States, supra,* 177 Ct.Cl. at 385, 367 F.2d at 837.

Valley Bank, the assignee, may or may not be in a better position than the surety relative to the government's superior set off rights involving the tax indebtedness of the contractor. *See Royal Indemnity Co. v. United States, supra,* 178 Ct.Cl. at 48–

50, 371 F.2d at 463–64 (government right of tax set off superior to rights of surety and assignee). *See Barrett v. United States, supra,* 177 Ct.Cl. at 384, 367 F.2d at 836 (government's right of tax set off superior to claims of surety or other private parties).[9] *But see Central Bank v. United States,* 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953); *Rose v. United States,* 179 Ct.Cl. 224, 230–31, 373 F.2d 963, 966–67 (1967) (contract clause specifically provided that monies due assignee under contract not subject to reduction or set off). The third-party plaintiff assignee contends that since it is immune from IRS tax set off it should be found entitled to the contract proceeds. Such a contention is without merit. *See Royal Indemnity Co. v. United States, supra.*

### Conclusion

The Corps of Engineers properly retained contract proceeds from the Tucannon contract until the matter of entitlement thereto was resolved by the court. In light of the above discussion, plaintiff's motion for partial summary judgment is granted with the third-party plaintiff's motion for partial summary judgment denied. The complaint of the third-party plaintiff shall be dismissed when a final judgment is entered in this case.

---

9. The Assignment of Claims Act, 31 U.S.C. § 3727(d) (1982) provides that in certain circumstances, a government contract may provide "that a future payment under the contract to an assignee is not subject to reduction or set off." The circumstances when this is permitted is "[d]uring a war or national emergency proclaimed by the President or declared by law and ended by proclamation or law * * *." *Id.* The Tucannon contract contained an Assignment of Claims Clause (1976 Oct.) which, in substance, provided that payments under the contract to an assignee were not subject to set off or reduction "only if this contract is made in time of war or national emergency as defined in said [Assignment of Claims] Act * * *." Third-party plaintiff, assignee maintains that the National Emergency of 1950, Proclamation No. 2914 dated December 16, 1950, 15 Fed.Reg. 9029, as continued by Proclamation No. 2974 dated April 28, 1952, 17 Fed.Reg. 3813 *exempts it from any tax set off or reduction* of contract proceeds under the Tucannon contract. The above Proclama-

tions and Emergencies related thereto were terminated prior to the date (March 9, 1984) of the Tucannon contract. *See* 50 U.S.C. § 1601 et seq. (1976); *see also* S.Rep. No. 1168, 94th Cong. 3d. Sess., 8–10, *reprinted in* 1976 U.S. Code Cong. & Admin. News, 2288, 2294–96 (1976). However, 50 U.S.C. § 1651 specifically provided that said termination did not apply to any of the powers and authorities conferred under 31 U.S.C. § 203 and 41 U.S.C. § 15. *See* B–201164, 60 Comp. Gen. 510 (1981). The cited decision of the Comptroller General *supra,* supports the view that the assignee in this case would, if held to be entitled to the contract proceeds, be free of any reduction or set off for contractor tax indebtedness. The court is not aware of any judicial decision on the matter at this time. Because the assignee's rights to the contract proceeds have been determined to be inferior to those of the surety, it is not necessary to reach any definitive decision on the assignee's rights vis-a-vis the IRS in this case.

Plaintiff and defendant are directed to try and reach agreement on disposition of the contract proceeds at issue in accordance with this opinion within thirty (30) days of the date of said opinion and to file a formal joint statement indicating whether the final judgment to be entered in this case should reflect an administrative disposition of the contract funds in question and a dismissal of the two complaints and defendant's counterclaim or whether the final judgment should reflect an amount to be entered for plaintiff, an amount to be entered for defendant on its counterclaim, for payment to IRS of Monument's tax indebtedness, and a dismissal of the third-party plaintiff's complaint. On the other hand, if plaintiff determines to contest the government's right of tax set off, then plaintiff is directed to file an appropriate motion within thirty (30) days of the date of this opinion with subsequent briefing to be in accordance with applicable RUSCCs.